IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| KENNETH S., § § Plaintiff, § § V. § § ANDREW SAUL, Commissioner of § Social Security, § § Defendant. § | No. 3:18-cv-2450-L-BN |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Kenneth S. seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

**Background**

Plaintiff alleges that is he disabled as a result of left ventricular hypertrophy, diabetes mellitus, hyperlipidemia, idiopathic peripheral autonomic neuropathy, atrial dilation, a dilated ventricle, primary pulmonary hypertension, orthostatic hypotension dysautonomic syndrome, upper respiratory infection, and lumber strain. *See* Administrative Record [Dkt. No. 13-1] ("Tr.") at 290. Alleging an onset date of March 24, 2014, Plaintiff filed an application for supplemental social security income, which the Commissioner initially denied – and denied again on reconsideration. *See id.* at 98-117. Plaintiff then requested a hearing before an administrative law judge ("ALJ"). *See*

*id.* at 133-34. That hearing was held on October 18, 2016. *See id.* at 49-97. A supplemental hearing was held on February 10, 2017, where Dr. James Gray, a consultive examiner, and Plaintiff appeared and testified. *See id.* at 32-48. At the time of the hearing, Plaintiff was 56 years old and had completed high school. *See id.* at 61. Plaintiff has not engaged in substantial gainful activity since his onset date of March 24, 2014. *See id.* at 14.

The ALJ found that Plaintiff was not disabled. *See id.* at 26. Although the medical evidence established that Plaintiff suffered from the severe impairments of obesity, congestive heart failure with hypertension, osteomyelitis and great toe amputation, and diabetes mellitus with early retinopathy and peripheral neuropathy, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. *See id.* at 14. The ALJ further determined that Plaintiff had the residual functional capacity to perform

> light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except standing and/or walking four hours total in an eight-hour workday. The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently and sit six hours total in an eight-hour workday. He can occasionally climb ramps or stairs and never climb ladders, ropes, or scaffolds. He can frequently stoop and occasionally crouch, crawl, or kneel. The claimant cannot perform tasks that specifically require balancing on narrow objects like beams or elevated walkways, but he retains the ordinary balance to stand, walk, and perform other postural movements. He cannot work in high heat or humidity, but he can pass through such areas for 10 minutes or less at one time to reach another temperature-controlled area.

*See id.* at 20. As such, ALJ found that Plaintiff was not disabled and was capable of performing past relvant work as a data entry clerk. *See id.* at 25.

Plaintiff appealed that decision to the Appeals Council, which affirmed the ALJ's decision. *See id.* at 1-5, 227-29.

Plaintiff then filed this action in federal district court. *See* Dkt. No. 1. Plaintiff challenges the hearing decision on the grounds that (1) the ALJ's Step Four finding that Plaintiff retained the residual functioning capacity to perform his past relevant work as a data entry clerk was not supported by substantial evidence, and that (2) the ALJ's hypothetical question, on which the ALJ relied, was not supported by substantial evidence and the vocational expert's response to this question was not substantial evidence.

The undersigned concludes that the hearing decision should be reversed and remanded.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552-55 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and

3

determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant

4

from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to

5

fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Plaintiff challenges the hearing decision on the grounds that (1) the ALJ's Step Four finding that Plaintiff retained the residual functioning capacity to perform his past relevant work as a data entry clerk was not supported by substantial evidence, and that (2) the ALJ's hypothetical question, on which the ALJ relied, was not supported by substantial evidence and the vocational expert's response to this question was not substantial evidence.

As to the first issue, Plaintiff argues that the ALJ's Step Four finding that he retained the residual functioning capacity to perform past relevant work as a data entry clerk was not supported by substantial evidence because it was not based on a "valid medical opinion that takes into account all of [Plaintiff's] relevant documentation." Dkt. No. 18 at 15. He asserts that Dr. James Gray's May 2015 consultive examination report – and subsequent testimony thereon – does not provide substantial evidence as to Plaintiff's visual limitation because he has experienced

6

significant deterioration since then. While the deterioration was somewhat documented in the ALJ's recitation of subsequent events in the opinion, the ALJ did not rely on any additional medical source report to determine the impact of the deterioration. *See id*. at 15-30. According to Plaintiff, "[t]herefore, the ALJ improperly based her RFC finding upon her own lay intuition," substituting her opinion for that of a medical doctor – an error, Plaintiff contends, that warrants reversal.

The Commissioner contends that the ALJ properly considered both Dr. Gray's opinion evidence as the consultative examiner and the subsequent medical evidence. *See* Dkt. No. 19 at 4-11. The Commissioner asserts that "the ALJ devoted over six pages of her decision" to the subsequent medical data in determining Plaintiff's capacity for work and that, after considering this data, the ALJ found that the evidence did not support a disability finding. *Id*. at 6. The Commissioner argues that, in doing so, the ALJ was not "playing doctor" but rather was properly interpreting the evidence to determine Plaintiff's capacity for work, a function that is the ALJ's job. *Id*. at 8.

For the reasons explained below, the undersigned disagrees and concludes that the ALJ erred in determining Plaintiff's residual functioning capacity for the lack of substantial evidence.

In her opinion, the ALJ reported that

[t]he claimant also alleged diabetic retinopathy causing blurry vision, watery eyes, floaters, minimal vision in the right eye, and bleeding and swelling in the eyes. He testified that he could not read a newspaper or large print and he could not drive.

....

As for the claimant's visual impairment [and] diabetic retinopathy, the claimant visited a consultative ophthalmologist, James Gray, M.D., on May 14, 2015, at the request of the State agency for disability determination services (Ex. 10F). The examination showed mild deficits in visual acuity (20/60) without correction and good acuity (20/25) with correction (Ex. 10F/2). Dr. Gray's examination also showed some mild restrictions in fields of vision (Ex. l0F/4-6). He retained 81 percent of the visual field in the left eye and 69-91 percent (tested twice) of the visual field in the right eye (Ex. l0F/4-6).

Dr. Gray appeared and testified at a supplemental hearing in February 2017, responding to questioning from the claimant's attorney. Dr. Gray explained that his examination indicates no work-related restrictions on near acuity or far acuity and no depth perception restriction. Additionally, Dr. Gray stated that although the visual field testing showed some abnormalities, it was not of the severity to restrict driving, hazards, or other work activities and the claimant is not statutorily blind. The undersigned accords great weight to the opinions from Dr. Gray because he is the chief of the service for ophthalmology at Baylor Hospital in Dallas for the past 10 years, he examined the claimant, he supported his opinions with his detailed examination findings, and he thoroughly explained his findings and opinions in response to questioning from the claimant's representative. With regard to the claimant's treatment records, an examination on August 3, 2015[,] showed limited field of vision in the right eye but full field of vision in the left eye (Ex. 11F/10). This occurred during the claimant's episode of syncope discussed above. Nevertheless, even if the claimant consistently has limited field of vision in the right eye, his full field of vision in the left eye is sufficient to work within the above RFC. The limitations of no ladders, ropes, or scaffolds and no balancing on narrow objects accounts for his vision deficits.

Thereafter, the claimant consistently received treatments for his eyes, usually laser therapy and injections, due to diabetic retinopathy (see Ex. 11 F-13F; 15F-17F; 19F-21F; 23F). The medical records show mostly consistent findings and complaints throughout 2015-17. The claimant also underwent two procedures to address retinal detachments and hemorrhaging and two procedures to remove cataracts bilaterally (Ex. 12F/234, 284; 13F/62; 20F/12). The treatment records show that the claimant recovered quickly after each of these procedures, usually "doing well" with "no pain" and "fairly good vision" (see e.g., Ex. 12F/321; 13F/76; 17F/11; 19F/28; 21F/45).

> Importantly, the objective examination findings do not support the severity of vision deficits alleged by the claimant and his representative. The claimant testified that he could not read a newspaper or even large print and he could "barely" see from the right eye. However, the claimant's treatment records show only mild or moderate deficits in acuity without correction. On August 10, 2016, the record shows 20/100 and 20/60 acuity in the right eye (Ex. 15F/1). The record on September 14, 2016 shows 20/70 visual acuity (Ex. l6F/12). On October 26, 2016, the record states that he had "fairly good vision" and the next visit on November 15, 2016 shows "improved" findings (Ex. 17F/11; 19F/28). Additionally, on January 11, 2017, the record shows 20/80 visual acuity (Ex. 21F/46). Furthermore, on April 11, 2017, the record shows 20/100 acuity on the right, 20/60 on the left, 20/50 on the right through a pinhole, and only mildly limited visual fields (Ex. 23F/45-46). The final examination on May 8, 2017 shows similar findings (Ex. 23F/87-88).
>
> In sum, as stated above, the limitations to no ladders, ropes, scaffolds, or balancing on narrow objects address the claimant's mild deficits in visual fields and acuity. However, the objective medical findings do not support the severity of vision restrictions alleged by the claimant. Moreover, the undersigned notes that even if the claimant had no useful vision in the right eye, as he alleged at the hearing, with no depth perception, the vocational expert testified that such limitations would not prevent an individual from performing the claimant's past relevant work as a data entry clerk.

*Id.* at 23-24.

Plaintiff takes issue with the opinion on two accounts: (1) because of a lapse of two years between Dr. Gray's examination and the testimony to which the ALJ gave great weight, Dr. Gray's analysis does not reflect the visual degeneration in the interim, and whether that impacted his ability to perform his past relevant work as a data entry clerk; and (2) the ALJ did not employ or seek a medical source report to interpret what impact the subsequent surgeries and degeneration would have in arriving at the RFC. *See* Dkt. No. 18 at 16. Plaintiff asserts that, while Dr. Gray's

9

medical opinion may have been true as to his visual health at that time in 2015, he has since

> experience[d] significant deterioration in his vision, developing actual proliferative diabetic retinopathy with vitreous hemorrhage, detached retina of both eyes, and visually significant cataract, the effect of which the ALJ evaluated based on her own interpretation of highly technical medical data without the benefit of any medical expert opinion, as Dr. Gray did not have the benefit of reviewing numerous medical reports of record showing significant deterioration of [Plaintiff's] vision. *Id*. at 17.

The United States Court of Appeals for the Fifth Circuit has explained that, as a non-medical professional, the ALJ is not permitted to "draw his own medical conclusions from some of the data, without relying on a medical expert's help." *Frank v. Barnhart*, 326 F.3d 618, 621-22 (5th Cir. 2003). The Court of Appeals has reasoned that "'[c]ommon sense can mislead'" and "'lay intuitions about medical phenomena are often wrong.'" *Id.* (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)).

As the undersigned noted in *Montoya v. Berryhill*, "[c]ourts have therefore consistently found that an ALJ's RFC determination is not supported by substantial evidence when the ALJ has failed to either elicit or take into account the opinion of a treating or examining physician." No. 3:16-cv-1594-D-BN, 2017 WL 3835950, at *4 (N.D. Tex. Aug. 1, 2017), *rec. adopted*, 2017 WL 3834753 (N.D. Tex. Aug. 31, 2017) (citing *Ripley*, 67 F.3d at 557-58); *see also Williams v. Astrue*, 355 F. App'x 828, 832 (5th Cir. 2009) (holding that "the ALJ impermissibly relied on his own medical opinions as to the limitations presented by 'mild to moderate stenosis' and 'posterior spurring' to develop his factual findings"); *Butler v. Barnart*, 99 F. App'x 559, 560 (5th

10

Cir. 2004) ("There was no medical opinion or evidence submitted reflecting that, after Butler had two and one-half toes amputated from his left foot, he could perform work requiring standing or walking for six-hour periods during an eight-hour work day. Thus, there was not substantial medical evidence in the record to support the ALJ's determination."); *Tyler v. Colvin*, No. 3:15-cv-3917-D, 2016 WL 7386207, at *5 (N.D. Tex. Dec. 20, 2016) (concluding that "the ALJ impermissibly relied on his own medical opinion to develop his RFC determination").

In *Ripley v. Chater*, the Fifth Circuit found that the ALJ's determination was not substantially supported where there was evidence in the record indicating that the claimant suffered from a medical condition but no medical professional's assessment of the evidence. *See* 67 F.3d at 557.

Here, just as in *Ripley,* "[t]he Commissioner argues that the medical evidence substantially supports the ALJ's conclusion ... [by pointing] to reports discussing the extent of Ripley's injuries," but "[w]ithout reports from qualified medical experts, however, [the undersigned] cannot agree that the evidence substantially supports the conclusion that [Plaintiff] was not disabled because [the undersigned is] unable to determine the effects of [Plaintiff's] conditions, no matter how 'small,' on his ability to perform sedentary work." *Id*. at 558 n.27.

Here, during the two years between Dr. Gray's examination and the ALJ's determination, Plaintiff underwent "thirteen invasive procedures" and endured blurry vision, film, vitreous hemorrhage with posterior vitreous detachment of his right eye, severe nonproliferative diabetic retinopathy of his left eye, a detached retina, posterior

11

vitreous detachment, cataracts, floaters, the inability to read, double vision, significant diabetic macular edema, and blood on the eye. *See* Dkt. No. 18 at 16-22. Despite this change in circumstances, the ALJ did not request an additional medical source report to ascertain how this would impact Plaintiff's ability to return to his work as a data entry clerk. *See Ripley*, 67 F.3d at 557 ("What the record does not clearly establish is the effect Ripley's condition had on his ability to work.").

"The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557. This usually includes "request[ing] a medical source statement describing the types of work that the applicant is still capable of performing" despite his or her ailments. *Id.*; *see also* SSR 96-5P (defining "medical source statements" as "medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities").

The court in *Washington v. Berryhill* reached a similar decision, holding that "the undersigned cannot conclude that the ALJ's decision was supported by substantial evidence" where two years had elapsed between the plaintiff's initial medical assessment and the ALJ's determination, the plaintiff's condition deteriorated during that time, and despite the significantly changed circumstances the ALJ adopted the earlier medical assessment in making the RFC determination. No. 3:17-cv-1-BK, 2017 WL 4422404, at *4 (N.D. Tex. Oct. 5, 2017).

"The ALJ's failure to [request an additional medical source report] here prejudiced Plaintiff because, had such a report been obtained, the outcome might have been different. For example, if the ALJ found that Plaintiff was limited to sedentary work, a finding of 'disabled' would be directed under the Grids because Plaintiff met the required criteria at the time of the ALJ's decision." *Id*.

The Commissioner argues that reliance on an additional medical source here is not necessary and that the ALJ made a determination as to the RFC based on the evidence in the record, which is within her job function as an ALJ. *See* Dkt. No. 19 at 12. The Commissioner asserts that "[w]hat [Plaintiff] characterizes as the ALJ substituting her opinion for that of a medical professional (or 'playing doctor') is actually the ALJ properly interpreting the medical evidence to determine [Plaintiff's] capacity for work." *Id*. at 8.

As Plaintiff notes, he "recognizes that 'it is the ALJ's responsibility to determine a claimant's residual functional capacity based on all the relevant evidence of record, including the medical records, treating physician observations, and the claimant's description of her limitations,'" but that is all predicated on the fact that the RFC must be supported by substantial evidence. Dkt. No. 20 at 6.

The undersigned agrees. SSR 96-5P instructs that "our rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner. For treating sources, the rules also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the

13

Commissioner and the bases for such opinions are not clear to us." Titles II & XVI: Med. Source Opinions on Issues Reserved to the Comm'r, SSR 96-5P (S.S.A. July 2, 1996).

Here, Plaintiff's then-current visual health was unclear. And "[i]t would appear ... that the ALJ made her own medical conclusions about whether" Plaintiff's visual health would medically allow him to return to relevant past work as a data entry clerk. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). Courts have

> warned ALJ's against "playing doctor" and making their own independent medical assessments. For example, in *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir.1990), Judge Posner warned:
>
>> But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.... The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong.

*Id.*; *see also Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000) ("The ALJ is not at liberty to make a medical judgment regarding the ability or disability of a claimant to engage in gainful activity, where such inference is not warranted by clinical findings." (citing *Spencer v. Schweiker*, 678 F.2d 42, 45 (5th Cir.1982)); *Franco v. Colvin*, No. CV H-15-2443, 2016 WL 7736851, at *17 (S.D. Tex. Aug. 12, 2016) ("There is no evidence in the record to indicate that any of the mental health professionals who evaluated Plaintiff's depression suspected that his anger issues were not credible. In deciding not to consider a connection between Plaintiff's anger as a symptom of his depression, the ALJ is effectively 'playing doctor' and making a medical determination, something he

14

is not qualified to do."); *Williams*, 355 F. App'x at 832 ("In *Ripley*, we held that an ALJ may not – without opinions from medical experts – derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions. Thus, an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions.").

As such, "on this record, the undersigned cannot conclude that the ALJ's decision was supported by substantial evidence. The ALJ should have requested a medical source statement describing the types of work Plaintiff could do given his limitations. The ALJ's failure to do so here prejudiced Plaintiff because, had such a report been obtained, the outcome might have been different." *Washington,* 2017 WL 4422404, at *4 (internal citations omitted).

Accordingly, absent a showing of substantial evidence that Plaintiff retained the residual functioning capacity to perform his past relevant work as a data entry clerk, the Court should reverse and remand the case for further adjudication.

## Recommendation

The hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.[1]

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within

---

[1] By recommending a remand for further administrative proceedings, the undersigned does not suggest that Plaintiff is or should be found disabled.

14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 31, 2019

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE